UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------

|  |  |  |
|---|---|---|
| THE WE PROJECT, INC., | : | |
| | : | Case No. 1:20-cv-2873 |
| Plaintiff, | : | |
| | : | OPINION AND ORDER |
| | : | [Resolving Doc. 6] |
| v. | : | |
| | : | |
| RELAVISTIC, LLC, *et al.*, | : | |
| | : | |
| Defendants, | : | |

-------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On December 31, 2020, Plaintiff The We Project, Inc., brought fraud, fiduciary duty, and racketeering claims against Defendants in this Court, including claims already pending in Delaware state court.[1] On January 12, 2021, Plaintiff voluntarily dismissed its Delaware claims.[2]

On January 20, 2021, Defendants filed a Federal Rule of Civil Procedure 41(d) motion to recover over $164,000 in Delaware litigation costs and attorney fees from Plaintiff.[3] Defendants also moved to stay the case until Plaintiff pays these costs.[4] Plaintiff opposes.[5] For the reasons stated below, the Court **DENIES** Defendants' costs and stay motions.

I. BACKGROUND

On April 22, 2020, Plaintiff, a Cleveland-based technology startup, sued individual Defendants Mike N. Hamilton and Christian M. Ibrahim in the Delaware Chancery Court,

---

[1] Doc. 1.
[2] Doc. 6-3.
[3] Doc. 6; Doc. 29-1.
[4] Doc. 6.
[5] Doc. 22.

Case No. 1:20-cv-2873
Gwin, J.

claiming that Hamilton and Ibrahim had breached fiduciary duties to Plaintiff.[6] Specifically, Plaintiff claimed that Hamilton had enticed Junad Kawa, a wealthy overseas businessman and Plaintiff's sole owner, to invest over $10 million into Plaintiff with Hamilton as CEO.[7]

But, according to Plaintiff, Defendant Hamilton never intended to grow Plaintiff into a profitable business.[8] Instead, Hamilton abused Kawa's trust and lack of oversight, misappropriating Kawa's investments for his own benefit and ultimately defrauding Plaintiff to the tune of $4 million over roughly three years, including by hiring his brother, Defendant Ibrahim, as Plaintiff's CFO.[9]

Plaintiff's Delaware Chancery complaint further stated that Defendant Hamilton repeatedly refused to provide Kawa with updates on Plaintiff's progress toward generating revenue, despite frequent large capital infusions from Kawa that funded Plaintiff's business equipment and office space.[10] Further, as Kawa's suspicions grew and Kawa and Defendant Hamilton's relationship became more acrimonious, Hamilton shut Kawa out entirely from accessing Plaintiff's email systems and financial records.[11]

With Kawa frozen out of Plaintiff's affairs, Plaintiff was "effectively paralyzed" from moving forward without formal discovery.[12] And, as the Delaware Chancery litigation progressed, Plaintiff gained information necessary to better make claims against Defendants. Indeed, Plaintiff claims to have learned through discovery the true extent Defendants

---

[6] Doc. 6-1.
[7] *Id.* at 1.
[8] *Id.* at 1–2.
[9] *Id.* at 5–22
[10] *Id.*
[11] *Id.*
[12] *Id.* at 18.

-2-

Case No. 1:20-cv-2873
Gwin, J.

arguably conspired to defraud Plaintiff, convert its assets for use in their competing businesses, and otherwise unjustly enrich themselves at Plaintiff's expense.[13]

On August 28, 2020, on the strength of what it had learned in discovery, Plaintiff filed an amended verified complaint in the Delaware court, now suing Defendant Sunny K. Nixon for breaching fiduciary duties to Plaintiff and further developing its pre-existing fiduciary claims against Defendants Hamilton and Ibrahim.[14]

On September 14, 2020, Defendants moved to dismiss the amended Delaware complaint, arguing, among other things, that the Delaware Chancery Court was an improper venue and forum *non conveniens*.[15] To that end, Defendants argued to the Delaware court that Ohio was the center of the dispute and the proper forum.[16]

On December 31, 2020, before the dismissal motion was resolved, Plaintiff sued Delaware Defendants Hamilton, Ibrahim, and Nixon in this Court.[17] Plaintiff also added a bevy of new Defendants and claims. Plaintiff sued Defendant Maggie Petrush, another Plaintiff fiduciary, for her alleged leadership role in the fraud scheme.[18] Plaintiff also sued Defendants Relavistic, LLC, and M-Partners, Inc., two corporate entities Defendants purportedly used to defraud Plaintiff.[19] Finally, Plaintiff brought new racketeering, civil conspiracy, and fraud claims against Defendants Hamilton, Ibrahim, Nixon, and Petrush, along with former lower-level Plaintiff employees who arguably participated in the scheme.[20]

---

[13] *Compare* Doc. 6-1 *with* Doc. 6-2.
[14] Doc. 6-2.
[15] Doc. 6-7 at 2.
[16] *Id.*
[17] Doc. 1.
[18] *Id.*
[19] *Id.*
[20] *Id.*

Case No. 1:20-cv-2873
Gwin, J.

On January 12, 2021, shortly after filing in this Court, Plaintiff voluntarily dismissed the Delaware Chancery case.[21] In response, Defendants moved for costs under Federal Rule of Civil Procedure 41(d), requesting that the Court order Plaintiff to pay more than $164,000 of Defendant's Delaware suit costs and attorney fees.[22] Plaintiff opposes.[23]

## II.     ANALYSIS

Federal Rule of Civil Procedure 41(d) provides that "[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant," the Court in which the second case is filed "(1) may order the plaintiff to pay all or part of the costs of that previous litigation; and (2) may stay the proceedings until plaintiff has complied." "Rule 41(d) is meant not only to prevent vexatious litigation, but also to prevent forum shopping, especially by plaintiffs who have suffered setbacks in one court and dismiss to try their luck somewhere else."[24]

Rule 41(d) serves to discourage plaintiffs who "attempt to gain any tactical advantage by dismissing and refiling th[e] suit."[25] The Rule's permissive language vests courts with broad discretion in awarding costs. In exercising that discretion, courts consider the plaintiff's intent in dismissing a previous case, the degree of similarity between the past and present litigation, and the extent to which past litigation expenditures can be recycled.[26]

---

[21] Doc. 6-3.
[22] Doc. 6; Doc. 29-1.
[23] Doc. 22.
[24] *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 874 (6th Cir. 2000).
[25] *Id.*
[26] *See id.*

-4-

Case No. 1:20-cv-2873
Gwin, J.

The Sixth Circuit, however, has held that "attorney fees are not available under Rule 41(d)."[27] The Sixth Circuit attorney fee award prohibition immediately disposes of $134,000 in claimed litigation costs, more than 80% of the reimbursement Defendants seek.[28]

Defendants' request that this Court depart from the Sixth Circuit's *Rogers* holding and apply other circuit law allowing Rule 41(d) attorney fee awards is a non-starter.[29] First, Defendants' argument that adverse legal developments following *Rogers* undermine its holding overlooks the fact that *Rogers* itself acknowledged "a split of authority as to whether Rule 41(d) authorizes attorney fees as part of an award of 'costs,'" before adopting the minority view.[30] And, putting aside the soundness of *Rogers*'s holding, it is not this Court's role to overrule published Sixth Circuit decisions.[31]

The next largest portion of Defendants' claimed Delaware litigation expenses are $27,000 in mediation costs.[32] The Court declines to award these costs for two reasons. First, the Court agrees with sister district courts that have refused to include mediation expenses in litigation cost awards in view of the "high judicial favor" typically placed on voluntary case settlement.[33] Allowing recovery of mediation and other settlement costs in this setting, absent evidence of bad faith, risks creating a perverse incentive.

---

[27] *Id.*
[28] Doc. 39-1.
[29] *See Horowitz v. 148 S. Emerson Assocs., LLC*, 888 F.3d 13, 24–26 (2d Cir. 2016) (collecting cases).
[30] *Rogers*, 230 F.3d at 874.
[31] *In re Miedzianowski*, 735 F.3d 383, 383 (6th Cir. 2013).
[32] Doc. 29-1.
[33] *Berne Corp. v. Gov't of V.I.*, Nos. 2000-141, *et seq.*, 2012 WL 369535, at *9 (D.V.I. Feb. 3, 2012); *United States v. Daimler AG*, No. 20-2564, 2021 WL 878894, at *4 (D.D.C. Mar. 9, 2021) (citing *Citizens for a Better Environment v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983)).

-5-

Case No. 1:20-cv-2873
Gwin, J.

Second, as Plaintiff points out, "[a]n award of costs under Rule 41(d) is limited to expenses incurred in the first action that will not be useful in the second action."[34] The parties' past mediation efforts are useful to them across their litigation relationship and may have laid the groundwork for future settlement.[35] The mere fact that the parties did not settle the case with their initial mediation efforts does not render those efforts useless.

As for the remaining $3,100 attributable to filing, mailing, and court fees,[36] the Court finds no evidence that Plaintiff has engaged in vexatious litigation tactics, forum shopping, or has sought a tactical advantage by dismissing the Delaware suit and refiling in this Court. Plaintiff had not yet experienced any setback in the Delaware litigation that raises dismissal motive concerns. Rather, the record reflects that as Plaintiff gained more information during discovery, it became clearer that resolution of this case is most appropriate in Cleveland courts, where all Defendants reside and the lion's share of Plaintiff's claim arose.

The circumstances of this case therefore do not warrant upsetting the default rule that each party must bear its own litigation costs.[37]

### III.    CONCLUSION

For these reasons, the Court **DENIES** Defendants' costs and stay motions.

IT IS SO ORDERED.

Dated: March 30, 2021

s/    *James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE

---

[34] *Lee v. Smith & Wesson Corp.*, 1:11-cv-1940, 2011 WL 5507192, at *4 (N.D. Ohio Oct. 24, 2011) (citing *Rogers*, 230 F.3d at 873).
[35] *Sandshaker Lounge & Package Store, LLC v. RKR Beverage, Inc.*, No. 3:17-cv-686, 2018 WL 6829046, at *3 (N.D. Fla. Nov. 19, 2018); *Elliot v. Specialized Loan Servicing, LLC*, 1:16-cv-4804, 2017 WL 3327087, at *19 (N.D. Ga. July 10, 2017).
[36] Doc. 29-1.
[37] *Ohio v. United States*, 986 F.3d 618, 631 (6th Cir. 2021).

-6-